UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| THE GEORGE NELSON FOUNDATION, | ) | ECF CASE |
| | ) | |
| Plaintiff, | ) | Civil Case No. 13 CIV 3427 (AT) |
| | ) | |
| v. | ) | Honorable Analisa Torres |
| | ) | |
| MODERNICA, INC., | ) | **MODERNICA INC.'S MEMORANDUM** |
| | ) | **OF LAW IN SUPPORT OF** |
| Defendant. | ) | **MOTION TO DISMISS COMPLAINT** |
| | ) | |
| | ) | **ORAL ARGUMENT REQUESTED** |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   ARGUMENT ...................................................................................................... 1

   1.    Plaintiff's Complaint Incompletely and Unsustainably Pleads Intellectual Property That is Knitted Together Solely Out of Whole Cloth. .................................................. 1

   2.    Plaintiff Pleads No Federal or State Registration, Nor Sufficient Common Law Usage. ... 3

      a.    Plaintiff Has No Protectable Interest in the Marks at Issue. ........................................... 3

   3.    Plaintiff Does Not Allege Licensing in Connection with the Accused Products. ............... 6

   4.    Failure to Police the Mark.................................................................................... 7

   5.    The First and Fourth Claims for Trademark Infringement Should be Dismissed: The Allegations in Complaint Do Not Show Valid, Enforceable Trademark Rights for Lamps Nor A "Protectable Interest". .............................................................................. 8

   6.    For Nearly 15 Years Modernica has Rightfully Used a Mark That Was Abandoned in Connection With the Sale of Lamps and Lighting Prior to its Adoption............................ 8

   7.    The Trademark Dilution Claims Fail Because Plaintiff's Mark is Not Famous. ................ 9

   8.    The Fifth Claim for New York Common Law Unfair Competition Fails to Allege Facts Indicating Bad Faith, as Required to State a Claim and Should Therefore Be Dismissed  12

   9.    The Sixth Claim for Violation of New York General Business Law § 349 Should be Dismissed Because the Elements are Not Satisfied and Modernica's Compliance with Federal Law is a "Complete Defense". ............................................................... 14

      a.    Compliance with Federal Regulations is a Complete Defense. ..................................... 15

10.   The Claim for Dilution and Unfair Competition Under New York General Business law §360-1 is Insufficiently Pleaded and Should be Dismissed.............................................. 16

11.   Plaintiff Lacks Standing to Cancel Modernica's Federal Trademark Registrations......... 17

12.   The Complaint Should be Dismissed Because Plaintiff's Claims are Barred by Laches, Acquiescence and Estoppel............................................................................... 19

    a.   Laches is Properly Addressed in a Rule 12(b)(6) Motion in the Second Circuit.......... 19

    b.   The Facts Alleged in the Complaint Reveal Laches, Acquiescence and Estoppel Based on Plaintiff's and Its Predecessor's Inaction During the Many Years of Modernica's Open Commercial Sales, Trademark Registration, and Development of Goodwill in the Marks ..................................................................................................... 19

    c.   Plaintiff's Allegations of "Willful Infringement" are Unsupported Conclusory Statements That Should Not Avail Plaintiff of a Path to Avoid Having the Court Consider Laches in This Motion.................................................................. 23

13.   The Complaint Should be Dismissed Without Leave to Amend Because Amendment Would be Futile.  Plaintiff Cannot State a Claim for Relief When More Complete and Truthful Factual Allegations are Provided........................................................ 24

III.   CONCLUSION ....................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Ameritox Ltd. v. Millennium Laboratories, Inc.*
  2012 WL 33155, (M.D. Fla. Jan. 6, 2012) .............................................................. 2

*Ashcroft v. Iqbal*
  556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) .................................... 2, 3, 23

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ........................................ 2, 3

*Broder v. Cablevision Systems Corp.*
  418 F.3d 187 (2nd Cir. 2005) ................................................................................. 7, 22

*Car–Freshner Corp. v. Getty Images, Inc.*
  822 F.Supp. 2d 167 (N.D.N.Y. 2011) ........................................................................ 22

*Chemical Corp. v. Anheuser-Busch, Inc.*
  306 F.2d 433 (5th Cir.1962) ...................................................................................... 16

*Coach Services, Inc. v. Triumph Learning LLC*
  668 F.3d 1356 (Fed Cir. 2012) ................................................................................. 11

*Cohen v. JP Morgan Chase & Co.*
  498 F.3d 111 (2d Cir. 2007) ...................................................................................... 14

*Cuoco v. Moritsugu*
  222 F.3d 99 (2d Cir. 2000) ........................................................................................ 24

*Decker v. Massey-Ferguson, Ltd.*
  681 F.2d 111 (2d Cir. 1982) ...................................................................................... 22

*Dudley v. Healthsource Chiropractic, Inc.*
  883 F.Supp. 2d 377 (W.D.N.Y. 2012) ........................................................................ 5

*Everest Capital, Ltd. v. Everest Funds Mgmt. LLC*
  393 F.3d 755 (8th Cir.2005) ...................................................................................... 11

*Genesee Brewing Co., Inc. v. Stroh Brewing Co.*
124 F.3d 137 (2d Cir. 1997) ................................................................. 12

*Girl Scouts of U.S. of America v. Bantam Doubleday Dell Pub. Group, Inc.*
808 F.Supp. 1112 (S.D.N.Y. 1992) ...................................................... 14

*Golden Hill Paugussett Tribe of Indians v. Rell*
463 F.Supp. 2d 192 ................................................................................ 21

*Grosz v. Museum of Modern Art*
772 F.Supp. 2d 473 (S.D.N.Y.  2010) ........................................... 19, 22

*Gruner + Jahr USA Publ'g v. Meredith Corp.*
991 F.2d 1072,  (2d Cir. 1993) ............................................................... 3

*Hormel Foods Corp. v. Jim Henson Productions, Inc.*
73 F.3d 497 (2d Cir. 1996) .................................................................... 16

*Hunt v. Alliance N. Am. Gov't Income Trust*
159 F.3d 723 (2d Cir. 1998) .................................................................. 24

*In re Houbigant, Inc.*
914 F. Supp. 997 (S.D. N.Y. 1996) ....................................................... 18

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*
62 F.3d 69 (2d Cir. 1995) ...................................................................... 22

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*
58 F.3d 27 (2d. Cir. 1995) ..................................................................... 13

*Johnson & Johnson v. Azam Intern. Trading*
2013 WL 4048295 (E.D.N.Y. August 2013) .................................... 12, 13

*Jolly Good Industries, Inc. v. Elegra, Inc.*
690 F.Supp. 227 (S.D.N.Y 1988) .......................................................... 14

*Jurin v. Google Inc.*
No. 2:09-cv-03065-MCE-KJM, 2010 WL 3521955 (E.D. Cal. Sept. 8, 2010) ......................... 2

*Kramer v. Time Warner Inc.*
937 F.2d 767 (2d Cir. 1991) ........................................................................................ 22

*LaSociete Anonyme des Parfums Le Galion v. Jean Patou, Inc.*
495 F.2d 1265 (2d Cir. 1974) ........................................................................................ 4

*Lennon v. Seaman*
63 F.Supp. 2d 428 (S.D.N.Y. 1999) ........................................................................... 19

*Leonick v. Jones & Laughlin Steel Corp.*
258 F.2d 48 (2d Cir. 1958) .......................................................................................... 19

*Lucent Info. Mgmt., Inc. v. Lucent Techs., Inc.*
186 F.3d 311 (3rd Cir. 1999) ......................................................................................... 6

*McKenna v. Wright*
386 F.3d 432 (2d Cir. 2004) ........................................................................................ 19

*Momentum Luggage & Leisure Bags v. Jansport, Inc.*
2001 WL 830667 (S.D.N.Y. 2001) ................................................................................ 6

*Morningside Group Ltd. v. Morningside Capital Group*
182 F.3d 133 (2d Cir. 1999) .......................................................................................... 3

*Moseley v. Victoria's Secret Catalogue, Inc.*
123 S. Ct. 1115 (U.S. 2003) ........................................................................................ 11

*Mr. Water Heater Enterprises, Inc. v. 1-800-Hot Water Heater, LLC*
648 F.Supp. 2d 576 (S.D.N.Y. 2009) .......................................................................... 15

*New York Stock Exchange, Inc. v. New York, New York Hotel LLC*
293 F.3d 550 (2d Cir. 2002) ........................................................................................ 17

*Ortho Pharm. Corp. v. Cosprophar, Inc.*
32 F.3d 690, (2d Cir. 1994) ........................................................................................... 3

*Patsy's Italian Restaurant, Inc. v. Banas*
575 F.Supp.2d 427 (E.D.N.Y. 2008) ............................................................................ 4

*Pearson Educ., Inc. v. Boundless Learning, Inc.*
919 F.Supp. 2d 434, (S.D.N.Y. 2013) ....................................................................... 3

*Pitney Bowes, Inc. v. ITS Mailing Sys., Inc.*
No. 09-05024, 2010 WL 1005146 (E.D. Pa. Mar. 17, 2010)...................................... 2

*Pucci v. Pucci Corp.*
10 U.S.P.Q.2d 1541 (N.D. Ill. 1988)...................................................................... 20

*Rabin v. Mony Life Ins. Co.*
2009 WL 4060978 (S.D.N.Y 2009) ....................................................................... 14

*Reliable Carriers, Inc. v. Excellence Auto Carriers, Inc.*
No. 11-cv-15326, 2012 WL 1931519 (E.D. Mich. May 29, 2012)............................. 2

*Roth v. Jennings*
489 F.3d 499 (2d Cir. 2007)................................................................................. 21

*Saratoga Vichy Spring Co. v. Lehman*
625 F.2d 1037 (2d Cir. 1980)................................................................... 13, 14, 20

*Savin Corp. v. Savin Group*
391 F.3d 439 (2nd Cir. 2004)............................................................................ 3, 10

*Securitron Magnalock Corp. v. Schnabolk*
65 F.3d 256 (2d Cir. 1995)................................................................................... 15

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*
588 F.3d 97 (2nd Cir. 2009)................................................................................. 16

*Strange Music, Inc. v. Strange Music, Inc.*
326 F.Supp. 2d 481 (S.D.N.Y. 2004).................................................................... 16

*TCPIP Holding Co. v. Haar Communications*
244 F. 3d 88 (2nd Cir. 2001)............................................................................... 11

*TechnoMarine SA v. Jacob Time, Inc.*
905 F.Supp. 2d 482 (S.D.N.Y. 2012)...................................................................... 9

*Time, Inc. v. Petersen Publ'g Co. L.L.C.*
   173 F.3d 113, (2d Cir. 1999) ..................................................................... 3

*Tina v. Dantanna's*
   611 F.3d 767 (11th Cir.2010) .................................................................. 5

*United Drug Co. v. Theodore Rectanus Co.*
   248 U.S. 90, 39 S.Ct. 48 (1918) .............................................................. 4

*Washington Speakers Bureau, Inc. v. Leading Authorities, Inc.*
   33 F. Supp. 2d 488, (E.D. Va. 1999) ....................................................... 12

**Rules**

Fed. R. Civ. P., Rule 12(b)(6) ...........................................................*Passim*

**Statutes**

15 U.S.C. §§ 1114(1) and 1125(a) .............................................................. 3
*Federal Practice & Procedur*e § 1226 (3d ed. 2004) ................................ 19
Federal Trademark Dilution Act, Lanham Act Section 1125(c) .................. 10
Lanham Act 15 U.S.C. Section 1051 *et. seq.* ....................................*Passim*
New York General Business Law § 349 .............................................. 14, 15
New York General Business law §360-1 ................................................. 16

**Other Authorities**

Charles Alan Wright & Arthur R. Miller .................................................. 19
McCarthy ................................................................................................ 12
McCarthy on Trademarks ........................................................................ 12

## I.     INTRODUCTION

Plaintiff The George Nelson Foundation has filed a frivolous and vexatious Complaint for claims concerning Modernica's use since the late 1990's and federal trademark registration of the marks GEORGE NELSON, NELSON, and two trade dress marks comprising lamp shade designs.  Although Plaintiff bases its claims on alleged rights arising use since 1947, it does not have a single trademark registration; rather, it only recently filed a *non* use-based trademark application for GEORGE NELSON for lighting goods, conceding the baselessness of its claims.

Modernica methodically built its lighting business and GEORGE NELSON and NELSON trademarks over nearly 15 years, from an abandoned product line with dead marks into a high-profile success.  Now comes the Foundation to purloin Modernica's hard-built business for itself, not only by seeking undeserved money damages and baseless injunctive relief but also by taking from Modernica without payment the unique equipment for making the goods, ostensibly to take over the lighting business now that it has proven successful.

The Complaint is rife with conclusions but bereft of factual allegations of use, of policing, and of licensing of the subject marks in connection with the accused goods, and egregiously fails to explain the third-party registration for GEORGE NELSON that was has subsisted for years, since these facts would eviscerate Plaintiff's claims. The Complaint fails to state a claim for which relief can be granted and should be dismissed.  Because its deficiencies cannot be cured by better pleading, the Court should spare the parties the exercise in futility of repleading and dismiss the Complaint with prejudice.

## II.    ARGUMENT

1. <u>Plaintiff's Complaint Incompletely and Unsustainably Pleads Intellectual Property That is Knitted Together Solely Out of Whole Cloth</u>.

To survive a motion to dismiss under Fed. R. Civ. P., Rule 12(b)(6), "a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal* 556 U.S. at 678, 129 S. Ct. at 1949.   The Supreme Court cautions against treating such conclusory allegations as true:  "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal***, 556 U.S. at 680-81, 129 S.Ct. at 1951.

In the wake of *Twombly* and *Iqbal*, Lanham Act cases have increasingly been dismissed for failure to provide *facts* in support of conclusory assertions.  *See, e.g., Reliable Carriers, Inc. v. Excellence Auto Carriers, Inc.,* No. 11-cv-15326, 2012 WL 1931519 (E.D. Mich. May 29, 2012); *Pitney Bowes, Inc. v. ITS Mailing Sys., Inc*., No. 09-05024, 2010 WL 1005146 (E.D. Pa. Mar. 17, 2010); *Jurin v. Google Inc.*, No. 2:09-cv-03065-MCE-KJM, 2010 WL 3521955 (E.D. Cal. Sept. 8, 2010).  Courts have rejected claims based on "naked assertions" merely reciting the elements of the claims. *See Ameritox Ltd. v. Millennium Laboratories, Inc.*, 2012 WL 33155, at *3 (M.D. Fla. Jan. 6, 2012).  In this action, Plaintiff fails to allege sufficient facts to support the trademark rights it asserts, as well as any actionable conduct by Modernica.  For example, as discussed in detail below, Plaintiff identifies no specific products sold by itself or its licensees under the marks at issue, no scope of the time and geography of its purported sales, no sales volume, no identification of even a single licensee or terms of a license, and most conspicuously, no claim that even a single lamp was ever sold by Plaintiff or its licensees under any of the four claimed-infringing marks during the nearly 15 years within which Modernica has been

continuously and conspicuously selling its lighting products under those marks.

Because the Complaint is completely devoid of facts to support the conclusions asserted, it should be dismissed in its entirety under *Twombly* and *Iqbal*.  Because there is no truthful set of facts under which it can be repleaded to support the claims asserted, dismissal should be with prejudice.

2.     Plaintiff Pleads No Federal or State Registration, Nor Sufficient Common Law Usage.

Plaintiff's Complaint is riddled with conclusory statements that, despite their vehemence, utterly fail to establish the requisite elements of a trademark infringement claim.  To assert a claim under the Lanham Act, a plaintiff must first satisfy two elements: it must establish that "it has a valid mark entitled to protection and that the defendant's use of it is likely to cause confusion."  *Morningside Group Ltd. v. Morningside Capital Group,* 182 F.3d 133, 137 (2d Cir. 1999) (citation omitted).  *See also Savin Corp. v. Savin Group*, 391 F.3d 439, 454 (2nd Cir. 2004); *Gruner + Jahr USA Publ'g v. Meredith Corp*., 991 F.2d 1072, 1074 (2d Cir. 1993).  This test is applicable to claims brought under 15 U.S.C. §§ 1114(1) and 1125(a) for infringement of rights in registered marks as well as in common law marks acquired by use.  *Time, Inc. v. Petersen Publ'g Co. L.L.C.*, 173 F.3d 113, 117 (2d Cir. 1999).  It also applies to false advertising claims under § 1125(a) of the Lanham Act.  *Ortho Pharm. Corp. v. Cosprophar, Inc.*, 32 F.3d 690, 694 (2d Cir. 1994) and P*earson Educ., Inc. v. Boundless Learning, Inc*., 919 F.Supp. 2d 434, 437 (S.D.N.Y. 2013).  Plaintiff never reaches the second prong because it falls short of the requirement to demonstrate it owns valid and enforceable rights in the marks at issue that entitle Plaintiff to protection.

a.     Plaintiff Has No Protectable Interest in the Marks at Issue.

The threshold issue is whether plaintiff has a protectable interest in the GEORGE

NELSON and NELSON marks and the two trade dress marks (collectively, the "Nelson Marks") in connection with lamps and lighting products.  A protectable interest presupposes commercial use of the marks by the plaintiff in connection with the subject goods; it is widely settled that trademark rights arise from use and not the mere adoption of a mark.  *United Drug Co. v. Theodore Rectanus Co*., 248 U.S. 90, 97, 39 S.Ct. 48, 50-51 (1918).  More than "sporadic, casual or transitory" use is required to satisfy the use requirement, which is a prerequisite to federal registration as well as rights at common law.  *See e.g.  Patsy's Italian Restaurant, Inc. v. Banas,* 575 F.Supp.2d 427, 446 (E.D.N.Y. 2008); *LaSociete Anonyme des Parfums Le Galion v. Jean Patou, Inc.,* 495 F.2d 1265, 1271-72 (2d Cir. 1974) ("To prove bona fide usage, the proponent of the trademark must demonstrate that his use of the mark has been deliberate and continuous.").  The Second Circuit has noted that, absent a trade in the goods and/or services, or at least an active and public attempt to establish such a trade, no trademark can be created or exist.  495 F.2d at 1272-1274 (89 unit sales in 20 years is not "the kind of *bona fide* use intended to afford a basis for trademark protection.").  Plaintiff has not alleged use of the mark in connection with lamps and lighting products in the Complaint.

In the absence of any allegations of federal or state trademark registrations, Plaintiff appears to be relying on purported common-law rights in the marks at issue.  From 1947 until May 2013, Plaintiff and its predecessor-in-interest had never filed to register the marks in the U.S. Patent and Trademark Office, and not a single federal or state trademark registration is anywhere alleged or even intimated throughout Plaintiff's long and jumbled complaint.  Indeed, nowhere in the Complaint has Plaintiff even alleged use sufficient to establish rights in the marks.  Instead, Plaintiff substitutes indefinite allegations that before his death in 1986 – more than a decade before Modernica adopted and began using the GEORGE NELSON and NELSON

4

marks – the designer Mr. Nelson allegedly "developed enormous goodwill in his name and brands George Nelson and Nelson (the "Nelson marks") as *used in connection with his designs for modern furniture, goods and accessories*."  (Complaint ¶12) (emphasis added).  This allegation does not even indicate a single sale, and at any rate associates the marks with design services, not goods.

The only allegation concerning any sales states only that "*many* of George Nelson's original designs have been continuously sold *in* the United States under the NELSON marks." (Complaint ¶ 13)  (*emphasis added*).  The carefully chosen wording- "*many* of the products," does not indicate that *even a single* lamp was sold under the Nelson marks by Plaintiff or any alleged licensee.  Further emphasizing the paucity of its claim of rights and explaining the reasoning behind its vague and inadequate pleading, Plaintiff's just-filed U.S. Trademark Application Ser. No. 85921195 covering "floor lamps" and "lamps" *was filed on an "intent-to-use" basis*!  No prior use was claimed, thus conceding that Plaintiff has not and is not using the mark in connection with the goods at issue.  As such, it is incapable of pleading enforceable rights against Modernica.  Sapphire Decl., ¶ 3.

Even if the Complaint had alleged sufficiently use in commerce of the mark in connection with lamps and lighting products, which Modernica does not concede, Plaintiff has failed to plead the geographic scope of its purported common law trademark rights.  Common law rights are limited to geographic regions of actual use.  *Dudley v. Healthsource Chiropractic, Inc.*, 883 F.Supp. 2d 377, 394 (W.D.N.Y. 2012) (Common law trademark rights only extend to the territories in which the mark's adopter sells its products, renders its services, establishes recognition of its mark, or draws its trade.); *See also Tina v. Dantanna's*, 611 F.3d 767, 780 (11th Cir.2010).  In *Momentum Luggage & Leisure Bags v. Jansport, Inc.,* 2001 WL 830667

(S.D.N.Y. 2001), the Southern District applied a four part test developed by the third circuit to conclude that the plaintiff's activities did not constitute "use in commerce" and thus did not create trademark rights.  The test used (1) volume of sales; (2) growth trends; (3) the number of persons purchasing the product in relation to the potential number of purchasers; and (4) the amount of product advertising, as factors to determine whether a party has established common law trademark rights in a specific geographic area.  2001 WL 830667 at *5, citing *Lucent Info. Mgmt., Inc. v. Lucent Techs., Inc.,* 186 F.3d 311, 317 (3rd Cir. 1999).

Plaintiff has alleged <u>no</u> facts as to any specific geographic region in which it allegedly sells lighting products under the marks, thus when this test is applied, it becomes clear that Plaintiff has failed to allege common law trademark rights and its claims are without basis. Plaintiff's barren reference to sales "*in* the United States" does not indicate anything more specific than a single location (such as a backyard in Idaho) and certainly does not form the basis on which to claim *any* geographic region; it does not even name New York.  (Complaint ¶ 13). Plaintiff's carefully crafted words, taken as true, demonstrate the absence of any foundation for its claimed rights.  In marked contrast, Plaintiff's own descriptions of *Modernica's* sales in the Complaint specifically allege "Lamps" which were "sold *in New York* and *throughout* the United States."  (Complaint ¶20) (emphasis added).

3.     <u>Plaintiff Does Not Allege Licensing in Connection with the Accused Products.</u>

Without deliberate and continuous use of the Nelson marks, Plaintiff cannot establish common law trademark rights, so Plaintiff has apparently chosen to rely on the scope of sales (if any) by its alleged licensees.  Yet the Complaint does not provide any information concerning any licensees' activities, and Plaintiff failed to attach any license agreements.  No licensee is identified, there is no indication of the scope of any license in terms of geographic region,

6

product, term of years, volume of sales, if any, and so on.  Also left unpleaded is whether Plaintiff licenses the use of Mr. Nelson's name as trademarks, the use of Mr. Nelson's name and likeness, or the designs his studio created, without which, as it is pleaded, it is not possible to evaluate the claims.  Moreover, Plaintiff has pleaded no *facts* indicating whether it or any actual licensee of Plaintiff ever used the names as trademarks commercially on any lamp, lighting product, or any other specific product, in any geographic region.

The Court is not required to accept as true the mere conclusory allegations in the Complaint with nothing more.  *See e.g. Broder v. Cablevision Systems Corp.*, 418 F.3d 187, 196 (2nd Cir. 2005)  ("Insofar as the complaint relies on the terms of [the plaintiff's] agreement, therefore, we need not accept its description of those terms, but may look to the agreement itself.").  Likewise, Plaintiff's Complaint should not survive this Motion to Dismiss on account of the sweeping yet ultimately merely conclusory allegations therein and Plaintiff's failure to allege any details or to attach the ostensible license agreements that are within its possession and/or control.

Taken as true, the facts alleged in the Complaint reveal that Modernica, not Plaintiff, holds valid, unopposed federal registrations in good standing for the Nelson Marks for lamps and lighting products, and Modernica is *the only entity* specifically identified *as ever* producing products under a Nelson  mark.  It is evident from the Complaint's deceptive draftsmanship that Plaintiff has not established protectable rights to the Nelson Marks in connection with lighting products.  The claims must therefore fail and should be dismissed without leave to amend.

4.      Failure to Police the Mark

Also notable for their glaring absence are any *facts* alleged to indicate that Plaintiff policed or protected the goodwill of the marks it purportedly owns.  Here again, the cascading conclusions in the Complaint generate more light than heat, failing to establish <u>any</u> common law

rights of or through enforcement of the marks by Plaintiff in connection with lighting products, and are certainly an insufficient basis from which to assert nationwide trademark rights in the marks in connection therewith.

Plaintiff's reluctance to plead in support of its policing efforts is understandable, given the fact that there are other third-party users also conspicuously using – and who have federally registered – the GEORGE NELSON mark. For example, the Principal Register contains a five year-old subsisting registration in the name of Wen Chen Wu for GEORGE NELSON BY VERICHRON in connection with clocks, which was granted on July 8, 2008 and alleges use as of 2007. Plaintiff did not oppose; in fact, it waited until July 8, 2013 – after 5 years passed and the registration was incontestable – to file a cancellation proceeding based on unspecified allegations of seniority. The lack of any real policing efforts on the part of Plaintiff speaks volumes and explains the absence of any sufficient pleading in the Complaint.[1]

5.     <u>The First and Fourth Claims for Trademark Infringement Should be Dismissed: The Allegations in Complaint Do Not Show Valid, Enforceable Trademark Rights for Lamps Nor a "Protectable Interest".</u>

As shown above, Plaintiff has not pleaded sufficiently any protectable rights in the marks at issue *vis-a-vis* Modernica's well-established, longstanding use of the marks at issue in connection with lamps and lighting products. This is because Plaintiff has not used nor licensed the mark for lighting since before Modernica's adoption thereof, if ever.

6.     <u>For Nearly 15 Years Modernica has Rightfully Used a Mark That Was Abandoned in Connection With the Sale of Lamps and Lighting Prior to its Adoption.</u>

Plaintiff's claims against Modernica are misplead because Modernica adopted and

---

[1]     The Complaint appears to be a disguised action for infringement of Mr. Nelson's right of publicity. However, under New York law, such a claim ceases upon death. Having no rights to sustain its claim, Plaintiff has turned to an unpleadable hodgepodge of allegations, none of which can possibly sustain any of the claims alleged.

commenced use of the Nelson Marks nearly 15 years ago when they were abandoned in the lighting category, and registered the marks nearly five years ago after establishing itself as the indisputable source of lighting products bearing the Nelson Marks over the preceding decade.

Where the goods at issue are genuine, there is no trademark claim. Modernica's lamps are genuine goods, manufactured using the original machinery, equipment and processes developed by Mr. Nelson in the early 1950's with the Howard Miller Clock Company, Modernica's predecessor-in-interest. Novak Decl., ¶ 3. The equipment was acquired following the insolvency and liquidation of Modernica's predecessor-in-interest. *Id.* The Second Circuit has observed that, "[a]s a general rule, trademark law does not reach the sale of genuine goods bearing a true mark even though the sale is not authorized by the mark owner. (citations omitted)". *TechnoMarine SA v. Jacob Time, Inc.*, 905 F.Supp. 2d 482, 488 (S.D.N.Y. 2012) (dismissing the trademark claims). The *TechnoMarine* Court explained that "[t]o state even a basic claim based on non-genuineness, [a plaintiff] must plead sufficient, plausible facts tending to show that the [goods] sold by [the defendant] actually fail to conform to plaintiff's quality control standards or are materially different from plaintiff's [goods]." *Id.*

Under the *TechnoMarine* analysis, all of Plaintiff's trademark claims should likewise be dismissed. The Complaint is devoid of any allegations of the Modernica product failing to conform or being materially different. Rather, the Complaint alleges that the Modernica lamps are "identical in appearance to lamps designed by the late George Nelson earlier" (Complaint ¶ 17). There are no allegations of inferior quality, and since Modernica is using the original equipment and processes, any such allegation would necessarily be untrue.

       7.    <u>The Trademark Dilution Claims Fail Because Plaintiff's Mark is Not Famous</u>.

Plaintiff has pleaded fame in such a manner that it deliberately confuses the issue of

whether Mr. Nelson is a famous individual or the marks GEORGE NELSON and NELSON are famous trademarks.  The Complaint does not endeavor to allege or establish the Nelson Marks are famous trademarks; instead, it relies on a statement Modernica submitted in response to an Office Action in which Modernica acknowledged that Mr. Nelson was a "famous, innovative and highly-regarded designer". (Complaint, ¶ 22).  Modernica, however, has *never* acknowledged the *Nelson Marks* are famous.  In any event, the Complaint fails to allege the elements necessary to state any cause of action based on fame of the marks at issue.

To state a claim for dilution under the Federal Trademark Dilution Act, Lanham Act Section 1125(c), the Complaint must allege that the mark (not the person named) is famous as an indicator of the source of goods or services in commerce.  Without satisfying the stringent requirements to designate a mark is "famous" as the term is understood for Section 1125(c), there is no further inquiry for dilution and the claim must be dismissed.  The Second Circuit explicitly stated that among the various prerequisites to a § 1125(c) claim, the one that most narrows the universe of potentially successful claims is the requirement that the senior mark be truly famous before a court will afford the owner of the mark the vast protections of the Federal Trademark Dilution Act ("FTDA"), noting that "a plaintiff owning only less-than-famous marks will receive no protection under the FTDA, even if that plaintiff can prove that the use of an identical junior mark has in fact lessened the capacity of the senior mark to identify and distinguish the plaintiff's goods or services—i.e., that actual dilution has occurred."  *Savin Corp. v. Savin Group*, 391 F.3d 439, 449 n.5 (2d  Cir. 2004).

In the Complaint, Plaintiff only alleges that the industrial designer Mr. Nelson earned awards and accolades for his artistic achievements in the field of design, not that GEORGE NELSON and/or NELSON is a "famous" commercial mark.  The Complaint also identifies by

title several books authored by Mr. Nelson during his lifetime.  (Complaint ¶¶ 10-12).  *However, the facts indicating commercial fame* of the subject marks *as required to bring a dilution claim under the Lanham Act are conspicuously absent from the Complaint*.  Without these facts, Plaintiff's dilution claim is unsustainable, and because Plaintiff *has not* established that the trademarks in the Complaint are famous under Section 1125(c) of the Lanham Act, the dilution claim must fail.

As with Plaintiff's other claims, its failure to plead facts sufficient to sustain a claim for trademark dilution flows from the simple point that there are no such facts to plead.  The category of "famous marks" for the purpose of bringing claims under Section 1125(c) is necessarily highly restrictive.  *Moseley v. Victoria's Secret Catalogue, Inc*., 123 S. Ct. 1115 (U.S. 2003).  The Second Circuit has explained that the requisite fame relates to products in commerce, not fame of a person:

> "The statute's requirement of fame is not satisfied by any kind of fame. The mark must have become famous *as the designator of the plaintiff's goods or services.* A merchant's taking a famous name—Shakespeare or Zeus—as the mark for its product would not thereby satisfy the statute's requirement of fame. It is true, such a mark would be famous in the sense that universal recognition would attach to the name Shakespeare or Zeus. To satisfy the statute, however, the mark must be famous in its capacity as a mark designating the plaintiff's goods. In other words, to be famous within the meaning of the statute, the mark must have achieved a high 'degree of ... acquired distinctiveness,' meaning that it must have become very widely recognized by the U.S. consumer public as the designator of the plaintiff's goods." *TCPIP Holding Co. v. Haar Communications*, 244 F. 3d 88, 97 (2nd Cir. 2001).

The Nelson marks do *not* enjoy such a lofty degree of commercial fame as household names indicating a single source in commerce, and indeed, no such allegation is pleaded in the Complaint.  *See Coach Services, Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1373  (Fed Cir. 2012); *Everest Capital, Ltd. v. Everest Funds Mgmt. LLC*, 393 F.3d 755, 763 (8th Cir.2005) ("The judicial consensus is that 'famous' is a rigorous standard."); *see also* 4 McCarthy on

Trademarks, § 24:104 at 24–286, 24–293 (noting that fame for dilution is "a difficult and demanding requirement" and that, although "all 'trademarks' are 'distinctive'—very few are 'famous'").

Moreover, the absence of registration supports the inference that the marks are not famous.  It is reasonable to infer *lack* of fame where a mark is unregistered, reasoning that if the owner of an allegedly "famous" mark did not even bother to take the commercially ordinary and minimal step of federally registering the mark, this is an admission against interest that the mark is not "famous" as a matter of law.  It is logical to conclude that a company that could have, but did not, federally register a mark, is behaving inconsistently in alleging that that mark is so "famous" that it is entitled to the extraordinary protection of the antidilution statute.  4 McCarthy, § 24:106 at 24–310.  *See also, Washington Speakers Bureau, Inc. v. Leading Authorities, Inc*., 33 F. Supp. 2d 488, (E.D. Va. 1999), *aff'd,* 217 F.3d 843 (4th Cir. 2000) ("The failure to register is not determinative, but it undermines [plaintiff's] contentions of fame.").  Plaintiff's claims of the fame of the marks that it purportedly owns must therefore fail, since there are no allegations sufficient to support its claims for trademark dilution.

> 8.  <u>The Fifth Claim for New York Common Law Unfair Competition Fails to Allege Facts Indicating Bad Faith, as Required to State A Claim and Should Therefore Be Dismissed</u>.

Common law unfair competition claims brought under New York law require bad faith in addition to the unfair competition elements of the Lanham Act.  *Johnson & Johnson v. Azam Intern. Trading*, Slip Copy, 2013 WL 4048295 at *11 (E.D.N.Y. August 2013).  In fact, "[a New York]  state law claim of unfair competition is not viable without a showing of bad faith." *Genesee Brewing Co., Inc. v. Stroh Brewing Co*., 124 F.3d 137, 149 (2d Cir. 1997).  More specifically, the Second Circuit has indicated that: "[t]he essence of unfair competition under

12

New York common law is the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods." *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.,* 58 F.3d 27, 35–36 (2d. Cir. 1995) (internal quotations and citations omitted), *cited in Johnson & Johnson*, 2013 WL 4048295 at *11. *See also Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980) and *Abe's Rooms, Inc. v. Space Hunters, Inc.*, 833 N.Y.S.2d 138, 140 (2d Dep't 2007) (requiring a showing of bad faith).

Behind its specious claims of "willfulness", the Complaint lacks essential factual allegations indicating bad faith by Modernica.  Modernica's nearly 15 years of conspicuous use of the marks with lighting goods absent any objection from Plaintiff, its predecessor-in-interest or any purported licensee belie any claim of bad faith.  Novak Decl., ¶ 9.  Further denying Plaintiff's claim, Herman Miller, Inc., one of its principal "partners" (according to its web site at georgenelsonfoundation.org, Complaint, Exhibit A; Novak Decl., ¶ 6) was a customer of Modernica's in the late 1990's and early 2000's *when it bought Modernica's lamps bearing the Nelson Marks in volume.*  Novak Decl., ¶¶ 4, 5.  Herman Miller is not only a "partner" of Plaintiff; the two entities share a principal business address.  Novak Decl., ¶ 8.  In fact, Plaintiff's president is Herman Miller's Creative Director, and Plaintiff's incorporator and agent for service of process is Herman Miller's General Counsel.  Novak Decl., ¶ 7.  With this nexus between Plaintiff and one of Modernica's earliest customers for its goods bearing the marks at issue, it is clear that willfulness and bad faith are simply nonstarters given the absence of any objection during nearly 15 years' known use before this unsupportable and poorly pleaded Complaint was filed.

Faced with a similar absence of requisite misconduct, the Southern District of New York

13

has ruled against claimants. *Girl Scouts of U.S. of America v. Bantam Doubleday Dell Pub. Group, Inc.*, 808 F.Supp. 1112, 1131 (S.D.N.Y. 1992); *see also Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980); *Jolly Good Industries, Inc. v. Elegra, Inc*., 690 F.Supp. 227, 233 (S.D.N.Y 1988). As the Complaint is devoid of factual allegations of bad faith, the Fifth Claim should be dismissed.

> 9.    The Sixth Claim for Violation of New York General Business Law § 349 Should be Dismissed Because the Elements are Not Satisfied and Modernica's Compliance with Federal Law is a "Complete Defense".

In order to establish a violation of Section 349, "(1) the defendant's challenged acts or practices must have been directed at consumers, (2) the acts or practices must have been misleading in a material way, and (3) the plaintiff must have sustained injury as a result." *Cohen v. JP Morgan Chase & Co*., 498 F.3d 111, 126 (2d Cir. 2007). Here, the Complaint has not alleged any materially misleading conduct by Modernica, and the public at large is unharmed by Modernica's alleged conduct, therefore the claim should be dismissed.

Where there is no basis for claiming that a defendant has engaged in practices that are "misleading in a material way," a plaintiff cannot prevail on a Section 349 claim. *Rabin v. Mony Life Ins. Co.,* 2009 WL 4060978 at *5 (S.D.N.Y 2009). Modernica is only alleged to have reported online that George Nelson was innovative and the Half Nelson Lamp  is a "definitive example of George Nelson's visionary design." (Complaint ¶ 19). The Complaint alleges that the lamps are "falsely advertised and promoted as authorized George Nelson lamps" (Complaint ¶ 19), but the website attached as an exhibit to the Complaint makes no such representation. (Complaint, Exh. D).

Section 349 is intended to provide a cause of action for consumers:  corporate competitors only have standing to bring a claim if "some harm to the public at large is at issue."

*Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995). ("The critical question ... is whether the matter affects the public interest in New York...."). Judgment for defendants is appropriate where plaintiffs have not shown harm to the public at large. *Mr. Water Heater Enterprises, Inc. v. 1-800-Hot Water Heater, LLC*, 648 F.Supp. 2d 576, 589 (S.D.N.Y. 2009). This claim is thus improper, as it does not allege public harm. Obviously, since Modernica has been the sole source for lighting products bearing the Nelson Marks for nearly 15 years, before which the names and goods had been abandoned in the category, public harm, if any, would have become apparent by the time Plaintiff pleaded this Complaint.

a.   Compliance with Federal Regulations is a Complete Defense.

Furthermore, Modernica has a complete defense to this Section 349 claim under New York law. Modernica's alleged conduct is subject to – and complies fully with – the rules and regulations of the United States Patent and Trademark Office, as well as the Lanham Act trademark statute, to say nothing of applicable consumer product safety standards in the field of lamps, lighting and electrical products. Such compliance is evident from the facts alleged on the face of the Complaint and other documents properly considered on a motion to dismiss. Modernica's federal registrations are subsisting and in good standing. Plaintiff invents rights for itself out of whole cloth and then misstates the law when it alleges that Modernica "fraudulently obtained … federal registrations for marks comprised of GEORGE NELSON, NELSON, and George Nelson's famous Bubble Lamp designs." (Complaint ¶ 21). At the time Modernica filed the applications, Mr. Nelson had been deceased for over 20 years. (Complaint ¶ 13). Moreover, no other party claimed rights in the GEORGE NELSON, NELSON or Bubble Lamp trade dress marks for lighting products before Modernica, and by the time of filing Modernica had been the substantially exclusive user of the marks in connection with the goods covered by the registrations for around a decade. Sapphire Decl., 5, 6; Novak Decl., 3. Pursuant to § 349(d),

15

such compliance by Modernica is a complete defense and bar to Plaintiff's claim, which should thus be dismissed.

> 10.    The Claim for Dilution and Unfair Competition Under New York General Business Law §360-1 is Insufficiently Pleaded and Should be Dismissed.

To succeed on a claim for dilution and unfair competition causing injury to business reputation and dilution of trademarks under this section, Plaintiff must show:  (1) the trademark is truly distinctive or has acquired secondary meaning; and (2) there is a likelihood of dilution either as a result of blurring or tarnishment. *Strange Music, Inc. v. Strange Music, Inc*., 326 F.Supp. 2d 481, 496 (S.D.N.Y. 2004).  Section 360-1 claims are complex; the Complaint falls far short of alleging the elements necessary to sustain the claim.

Tarnishment arises where a trademark is "linked to products of shoddy quality, or is portrayed in an unwholesome or unsavory context, with the result that the public will associate the lack of quality or lack of prestige in the defendant's goods with the plaintiff's unrelated goods."  *Hormel Foods Corp. v. Jim Henson Productions, Inc*., 73 F.3d 497, 507 (2d Cir. 1996) (internal quotation marks omitted).  A trademark may also be diluted by tarnishment if the mark loses its ability to serve as a "wholesome identifier" of plaintiff's product.  *Id.*; *accord Chemical Corp. v. Anheuser-Busch, Inc*., 306 F.2d 433 (5th Cir.1962) (use of exterminator's slogan "where there's life, ... there's Bugs" tarnished the use of beer company's slogan "where there's life, ... there's Bud."); *Starbucks Corp. v. Wolfe's Borough Coffee, Inc*., 588 F.3d 97, 110 (2nd Cir. 2009).

Here by contrast, Plaintiff has alleged only that Modernica refers to the late designer Mr. Nelson as "innovative" and "visionary", and his designs as "visionary" and "great" ("magnum opus"), laudatory representations that could only enhance any George Nelson mark.  (Complaint ¶¶ 18-19).  The Complaint also concedes that the lamps offered by Modernica are "identical in

16

appearance to lamps designed by the late George Nelson." (Complaint ¶ 17). As the Second Circuit noted in denying Starbucks' claim of tarnishment, a defendant's marketing of its product as "[v]ery high quality" is inconsistent with the concept of tarnishment. *Starbucks Corp.,* 588 F.3d at 111, *citing Hormel Foods Corp.,* 73 F.3d at 507.

Plaintiff also fails to allege facts sufficient to demonstrate dilution by blurring. In analyzing blurring under New York law, the Second Circuit has articulated a six factor test involving: "(i) the similarity of the marks; (ii) the similarity of the products covered; (iii) the sophistication of the consumers; (iv) the existence of predatory intent; (v) the renown of the senior mark; and (vi) the renown of the junior mark." *New York Stock Exchange, Inc. v. New York, New York Hotel LLC*, 293 F.3d 550, 558 (2d Cir. 2002). Here, the goods at issue are all based on public domain designs in connection with which Plaintiff has alleged no patent or other rights. Modernica acquired the manufacturing capacity after its abandonment by the previous owner of the manufacturing equipment. Novak Decl. 3. Thus, as with the discussion of bad faith above, predatory intent is not present and has not been alleged. Similarly, in light of the abandonment of the lighting category prior to its adoption and longstanding use of the Nelson Marks, Modernica owns senior rights in connection with those goods. Plaintiff has alleged no use of the mark in connection with lighting products since long before its predecessor abandoned the product category; thus there is no basis for comparison of products and the Seventh Claim should be dismissed.

11.    <u>Plaintiff Lacks Standing to Cancel Modernica's Federal Trademark Registrations</u>.

Plaintiff has no standing to seek cancellation of Modernica's registrations identified in the Complaint, thus the eighth claim for relief should be dismissed. "[W]hen a plaintiff has no right to use a name shown in a registered trademark of a defendant, that plaintiff has no standing

to seek cancellation of the trademark.  The petitioner must show a real and rational basis for his belief that he would be damaged by the registration sought to be cancelled, stemming from an actual commercial or pecuniary interest in his own mark." *In re Houbigant, Inc.*, 914 F. Supp. 997, 1002 (S.D. N.Y. 1996).

Modernica's GEORGE NELSON and NELSON marks were adopted *after* the previous manufacturer of the lamps stopped making and selling them and there were no longer any lighting goods bearing the marks in commerce.  Novak Decl., ¶ 3.  Moreover, Mr. Nelson had been deceased for over a decade at the time Modernica adopted the marks, and over 20 years when Modernica sought and obtained federal registrations for the marks.  The trademark file histories reveal no third-parties opposed or otherwise objected to registration of the marks by Modernica.  By contrast, Plaintiff has only less than half a year ago filed its own application to register GEORGE NELSON in connection with lighting products, and tellingly, the application was filed on an intent-to-use basis. Sapphire Decl., ¶ 3.  Plaintiff has thus declared that it has no rights based on use.

Most egregiously, the Complaint contains absolutely <u>no</u> allegation of use of the lamp configurations comprising the trade dress design marks represented in Modernica's Regs. Nos. 3,939,483 and 3,939,484, and these registrations do not even appear in the Complaint until the prayer for relief.

Because Modernica has for nearly 15 years been the exclusive source for lighting goods bearing the Nelson Marks and Plaintiff has not stated a basis for claiming any senior right or otherwise claiming injury arising from Modernica's continued registration and use of the marks in connection with the goods identified in the respective registrations, Plaintiff's claim for cancellation is utterly meritless and should be dismissed.

18

12.   <u>The Complaint Should be Dismissed Because Plaintiff's Claims are Barred by Laches, Acquiescence and Estoppel</u>.

a.   <u>Laches is Properly Addressed in a Rule 12(b)(6) Motion in the Second Circuit</u>.

In the Second Circuit, affirmative defenses are routinely considered on motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *Grosz v. Museum of Modern Art,* 772 F.Supp. 2d 473, 496 (S.D.N.Y.  2010).  *See, e.g., McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (citing cases); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1226 (3d ed. 2004).  Ruling on a Rule 12(b) Motion in *Leonick v. Jones & Laughlin Steel Corp*., 258 F.2d 48, 50 (2d Cir. 1958), the court noted that "when the suit is brought after the statutory time has elapsed, the burden is on the complainant to aver and prove the circumstances making it inequitable to apply laches to his case."  *See also Lennon v. Seaman*, 63 F.Supp. 2d 428, 439 (S.D.N.Y. 1999) ("[A] court may consider the defense of laches on a motion to dismiss '[w]hen the defense of laches is clear on the face of the complaint, and where it is clear that the plaintiff can prove no set of facts to avoid the insuperable bar.")[2].  It is thus appropriate to consider Modernica's defense of laches and its close analogues acquiescence and estoppel in the instant motion.

b.   <u>The Facts Alleged in the Complaint Reveal Laches, Acquiescence and Estoppel Based on Plaintiff's and Its Predecessor's Inaction During the Many Years of Modernica's Open Commercial Sales, Trademark Registration, and Development of Goodwill in the Marks</u>.

Plaintiff's claims are plainly barred by laches, acquiescence, and estoppel because Modernica has been openly and continuously selling lamps utilizing the Nelson Marks for 14 or so years with Plaintiff's knowledge, yet with no notice from Plaintiff before filing this litigation.

---

[2] Though considering laches  at the 12(b)(6) stage, based on the particular facts of the *Lennon* case, the Court therein did not find the elements satisfied.

Plaintiff has essentially acknowledged this in its attempt to plead around its requirement of alleging exclusive and continuous use of the asserted marks.  Modernica has detrimentally relied on Plaintiff's acquiescence for the entire period of use.  Plaintiff's key "partner" was one of Modernica's earliest NELSON Bubble Lamps customers and it is inconceivable that Plaintiff was thus unaware of Defendant's (and others' use of the marks in connection with the sale of lamps..  Novak Decl., ¶¶ 4, 5.  Plaintiff cannot claim on the one hand that it has diligently policed the marks (which it has not) and yet also claim it is blithely ignorant of Modernica's exclusive use of the marks for nearly 15 years.  Accordingly, Plaintiff is barred from now bringing this action and challenging Modernica's use and registration of the marks.

The conduct alleged in the Complaint and the absence of any notice or challenge by Plaintiff satisfy the Second Circuit's articulation of the simple elements for laches in a trademark case.  In the Second Circuit, laches is found where, as here "plaintiff had knowledge of defendant's use of its marks, … plaintiff inexcusably delayed in taking action with respect thereto, and … defendant will be prejudiced by permitting plaintiff inequitably to assert its rights at this time." *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1040 (2d Cir. 1980).  The facts alleged in the Complaint in this action and the absence of allegations of any notice or objection by Plaintiff during that period reveal the presence of all the elements for laches. *See, e.g., Pucci v. Pucci Corp.*, 10 U.S.P.Q.2d 1541 (N.D. Ill. 1988) (Counterclaim for both injunction and damages held precluded by unexplained 15 year delay upon which other party detrimentally relied by expanding a valuable business around the mark).

Modernica has been selling George Nelson Lamps "throughout the United States on its website as well as on third-party websites and in retail stores."  (Complaint ¶ 20).  Plaintiff craftily omitted the number of years that Modernica has been openly selling the lamps.

However, if the Court takes judicial notice of the U.S. Trademark Office ("USPTO") files for Modernica's trademarks referenced in the Complaint paragraphs 21 and 22, the facts indicate that Modernica has been openly and continuously selling lamps under the GEORGE NELSON and NELSON marks for around 14 years.  Sapphire Decl., ¶¶ 5, 6.  These USPTO records further indicate that Modernica filed for the marks approximately five years ago and reveal that Plaintiff filed no opposition to the registrations.  *Id*.

The law is clear that Courts may take judicial notice of public records from agencies like the USPTO.  *See e.g., Golden Hill Paugussett Tribe of Indians v. Rell*, 463 F.Supp. 2d 192 (As a general rule "[j]udicial notice may be taken of public filings.").  Matters subject to judicial notice are properly considered on a motion to dismiss and do not require the court to consider the motion as one for summary judgment.  *See, e.g., Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).  Moreover, Plaintiff relied on these USPTO files in asserting its claims in the Complaint, so it would be inappropriate to bar their consideration on this Motion.  "Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them." *In re Burlington Coat Factory Sec. Litig*., 114 F.3d 1410, 1426 (3d Cir. 1997).

Plaintiff should not be able to avoid dismissal for laches merely by omitting the dates and details for the conduct it describes.  It is indisputable that Plaintiff was aware of Modernica's sales because Plaintiff's "partner", Herman Miller, Inc., was one of Modernica's early customers, having a reseller relationship for Modernica's NELSON Bubble Lamps during 1999 and 2000.  Novak Decl., ¶¶ 4, 5.  Because Plaintiff attached pages from its website indicating that it is in "partnership" with Herman Miller, this Court can consider the additional information shedding light on their closely intertwined relationship "integral to the Complaint". *Car–*

*Freshner Corp. v. Getty Images, Inc*., 822 F.Supp. 2d 167 (N.D.N.Y. 2011) (On a motion to dismiss, it is proper to consider matters integral to the claims in the complaint).

Plaintiff attached materials from the Foundation Website to the Complaint (Complaint, Exhibit D).  Accordingly, it is appropriate for this Court to consider other parts of the website that is referenced.  *See e.g. Broder v. Cablevision Systems Corp*., 418 F.3d 187, 196 (2nd Cir. 2005) (Where the complaint relies on descriptions of the terms of an agreement, Court may look to the agreement itself.)  A court may consider matters outside the pleading for the purposes of adjudicating a motion to dismiss if those documents are "integral" to a plaintiff's claims-even if the plaintiff fails to append or allude to them to his complaint.  *See*, *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co*., 62 F.3d 69, 72 (2d Cir. 1995) (*per curiam*).  *See also Grosz v. Museum of Modern Art,* 772 F.Supp. 2d 473, 497 (S.D.N.Y.  2010).  Likewise, the Second Circuit has taken judicial notice of annual reports.  *See Decker v. Massey-Ferguson, Ltd*., 681 F.2d 111, 113 (2d Cir. 1982), cited with approval in *Kramer v. Time Warner Inc*., 937 F.2d 767, 774 (2d Cir. 1991).

In considering additional portions of Plaintiff's website, it becomes apparent that Herman Miller is a partner of the Foundation.  Closer scrutiny of Plaintiff's public corporate filings and Herman Miller's web site reveals that Plaintiff's president holds a Director title at Herman Miller.  Novak Decl., 7, 8.  Plaintiff's incorporator and agent for service is Herman Miller's General Counsel.  *Id*.  Moreover, Plaintiff's principal business address in its filings is the address of Herman Miller's corporate headquarters.  *Id*.  Since Herman Miller began purchasing lighting products bearing the Nelson Marks from Modernica at least as early as 1999, the foundation and its predecessors had knowledge of Modernica's sales and promotion of the lamps, including use of the GEORGE NELSON, NELSON and trade dress marks.

22

     c.    <u>Plaintiff's Allegations of "Willful Infringement" are Unsupported</u>
<u>Conclusory Statements That Should Not Avail Plaintiff of a Path to Avoid</u>
<u>Having the Court Consider Laches in This Motion</u>.

Plaintiff's counsel argues in its letter to the Court that laches is not appropriate in this

case because Plaintiff has alleged "willful" infringement in the Complaint.  However, no

supporting facts are provided.  Rather, the legal conclusion is flatly contradicted by other, factual

allegations in the Complaint.  Plaintiff does not allege that Modernica had any knowledge of

Plaintiff's intent to assert purported common law trademark rights nor any "notice" from

Plaintiff.  Instead, Plaintiff again submits the vagary that it objected just "prior to filing this

Complaint" (Complaint ¶ 23).  This example of the Complaint's persistent absence of specificity

intended to mask Plaintiff's insurmountable factual barriers to relief allows the reasonable

inference that Plaintiff gave *no* notice or demand until the filing.  Thus, the allegations in the

Complaint contradict the bare conclusory assertion that Modernica engaged in willful

infringement.

Significantly, the Supreme Court has <u>specifically</u> rejected hollow allegations of

willfulness in a complaint not supported by facts.  In *Ashcroft v. Iqbal***,** 556 U.S. 662 (2009) the

Supreme Court found unsupported allegations of willful conduct to be merely conclusory and not

entitled to be taken as true.  556 U.S. at 668.  Plaintiff's allegations herein are comparably

hollow and conclusory to those in *Iqbal*, and thus should not prevent the court's consideration of

laches.

Here, laches is demonstrated on the face of the Complaint:  the Exhibit thereto identifies

Herman Miller, Inc. as a "partner" of Plaintiff.  (Complaint, Exh. A; Novak Decl., ¶ 6).  It is

further supported by additional documents integral to the Complaint, including Plaintiff's

incorporation papers and annual report, which reveal it to be a "cat's paw" of Herman Miller,

sharing a principal address as well as key executives with the entity.  Novak Decl., ¶¶ 7, 8.  In light of the foregoing and the additional evidence integral to the complaint and of which the Court may take judicial notice, from Herman Miller's web site documenting its sale of Modernica's NELSON Bubble Lamps around 14 years ago (Novak Decl., ¶ 5), and copies of purchase order invoices confirming same (Novak Decl., ¶ 4), dismissal with prejudice on this Rule 12(b)(6) Motion based on laches is appropriate and warranted.

Looking to the face of the Complaint as well as the additional relevant documents referred to above, it becomes clear that Plaintiff through its relationship with Herman Miller was aware of and facilitated Modernica's early use of the marks at issue, after which it watched idly while Modernica built a highly successful lighting brand with the GEORGE NELSON and NELSON marks, raising no objection until a decade and a half later when it decided it wanted to purloin Modernica's hard-built business for itself, not only by seeking bogus money damages and injunctive relief but also by taking from Modernica without payment the unique manufacturing equipment for the products, ostensibly to take over the lighting business now that it is a proven success.  (Complaint: Prayer for Rlf. ¶ 2).

13. <u>The Complaint Should be Dismissed Without Leave to Amend Because Amendment Would be Futile.  Plaintiff Cannot State a Claim for Relief When More Complete and Truthful Factual Allegations are Provided</u>.

The Complaint should be dismissed without leave to amend where amendment would be futile.  *Hunt v. Alliance N. Am. Gov't Income Trust*, 159 F.3d 723, 728 (2d Cir. 1998).  Where, as here, the deficiencies in the Complaint are substantive and cannot be cured by more artful pleading, leave to amend should be denied.  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).  ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied").

24

**III.    CONCLUSION**

For the foregoing reasons, the Complaint should be dismissed in its entirety, without leave to amend.

Dated: September  17, 2013                NOVAK DRUCE CONNOLLY BOVE + QUIGG LLP

                                          By:  /s/*Victor K. Sapphire*
                                          VICTOR K. SAPPHIRE
                                          333 S. Grand Avenue, Twenty Third Floor
                                          Los Angeles, California 90071
                                          victor.sapphire@novakdruce.com
                                          213.787.2500

                                          *Attorneys for Defendant Modernica, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, Victor K. Sapphire, hereby certify that on this 17th day of September, 2013, I

electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which

will send notification of such filing via electronic mail to all counsel of record as follows:

William J. Dorsey, Esq.
william.dorsey@kattenlaw.com
Katten Muchin Rosenman LLP
525 West Monroe Street
Chicago, Illinois 60661-3693

Michael F. Sarney, Esq.
michael.sarney@kattenlaw.com
Katten Muchin Rosenman LLP
525 West Monroe Street
Chicago, Illinois 60661-3693

*/s/ Victor K. Sapphire*
Victor K. Sapphire (SBN #218634)